United States District Court
Southern District of Texas
**ENTERED**
March 23, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MONIQUE TILLIS, Individually and On Behalf of All Others Similarly Situated. | § § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 4:19–CV–01059 |
| GLOBAL FIXTURE SERVICES INC., ET AL., | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

This is a Fair Labor Standards Act ("FLSA") case. Plaintiff Monique Tillis ("Tillis") brings this action on behalf of herself and all other similarly situated class members who worked for Global Fixture Services, Inc. ("Global") performing services for Dolgencorp of Texas, Inc. ("Dolgencorp"). Tillis alleges that she and her fellow employees worked more than 40 hours per week without getting paid one and one-half times their rate of pay for the hours they worked over 40 in a workweek.

Tillis has filed an Opposed Motion for Conditional Class Certification and Notice. *See* Dkt. 29. Global and Dolgencorp have each filed separate briefs opposing the request for conditional certification. *See* Dkts. 34, 36. Having reviewed the motion, responses, reply, and supporting declarations, I find that Tillis has satisfied the lenient standard for conditional class certification and her motion should be granted.

## BACKGROUND

Tillis worked for Global from August 2016 until March 2019, helping perform "reset" services all across the United States for Dolgencorp, the owner of Dollar General stores. A "reset" involves removing merchandise, shelving, and fixtures from a store and then installing new and updated displays and restocking the merchandise. The purpose of a "reset" is to keep a store fresh and updated for customers. Global would send a crew of 12 employees to "reset" a single Dollar General location.

For those performing "reset" services, the work schedule generally consisted of two weeks of work and one week off. Some Global employees would meet at the particular Dollar General store on a Saturday, where they would spend a few hours unloading the truck containing the new shelving and fixtures. Then, Sunday through Thursday, all the Global employees would work 12 to 13 hours each day dismantling the store and resetting it in accordance with the new plan. Both Global and Dollar General employees reportedly supervised and instructed the "reset" crews.

Tillis claims she and her fellow employees received a set amount of pay from Global per "reset," no matter how long it actually took them to complete the work. Importantly for the purposes of this FLSA lawsuit, Tillis maintains that she and her fellow co-workers were misclassified as independent contractors and regularly worked in excess of 40 hours per week on a "reset" without getting paid overtime. Tillis estimates that, on average, she worked between 70 to 75 hours in an average workweek. In support of her motion for conditional certification, Tillis has submitted declarations from three

other former Global employees—Njee Tillis, Lakendrick Freeman, and Rodney Hitchcock—who describe similar work patterns and pay structures.

Based on these factual allegations, Tillis has sued her direct employer, Global, for failing to pay overtime.  Tillis has also sued Dolgencorp under a "joint employer" theory of recovery.  Tillis now moves to conditionally certify the following class as to her FLSA overtime claims: All individuals who (1) worked for Global at any time for the past three years; (2) were classified as independent contractors; and (3) performed "reset" services at Dollar General stores.

## LEGAL STANDARD

The FLSA requires employers to pay certain employees one and one-half times the employee's regular rate of pay for hours worked in excess of 40 hours per week.  The FLSA further authorizes an employee to bring a "representative" or "collective action" against her employer for unpaid overtime wages on behalf of herself and other employees "similarly situated."  29 U.S.C. § 216(b).  Unlike class actions in which potential class members may choose to opt-out of the lawsuit, FLSA collective actions require potential class members to notify the court of their desire to opt-in to the action.  *See id.*  Although the FLSA does not expressly require certification for a collective action to proceed, certification has been recognized as a useful case management tool for district courts to employ in appropriate cases.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ("A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.  The judicial system benefits by efficient

resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.").

The decision on whether to certify a suit as a collective action under the FLSA and approve notice to potential plaintiffs is committed to the sound discretion of the district court. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995). Notice to potential plaintiffs will not issue unless a court conditionally certifies the case as a collective action. *See Shaw v. Jaguar Hydrostatic Testing, LLC*, No. 2:15-CV-363, 2017 WL 3866424, at *3 (S.D. Tex. Sept. 5, 2017) ("[T]he sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court. District courts have discretion in deciding whether to order notice to potential plaintiffs.") (internal quotation marks and citations omitted).

Although the FLSA authorizes a plaintiff to bring an action on behalf of similarly situated persons, the FLSA does not define "similarly situated." The Fifth Circuit has declined to adopt any specific test to determine when plaintiffs are similarly situated such that the district court should certify a collective action and authorize notice. That being said, most district courts in the Southern District of Texas (including this one) have adopted the lenient two-step approach outlined in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *See Freeman v. Progress Residential Prop. Manager, LLC*, No. 3:16-CV-00356, 2018 WL 1609577, at *2 (S.D. Tex. Apr. 3, 2018).

The two stages of the *Lusardi* test are the "notice stage," followed by the "decertification stage." *Mooney*, 54 F.3d at 1213–14. At the notice stage, the court

4

conducts an initial inquiry into "whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010). Courts usually base this decision upon "the pleadings and any affidavits [that] have been submitted." *Mooney*, 54 F.3d at 1214. Because of the limited evidence available at this stage, "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Id.* (footnote omitted). In fact, courts "appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1214 n.8 (quotation marks and citation omitted). At no point during the notice stage of conditional certification should a court look to the merits of the lawsuit's allegations. *See Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 690 (S.D. Tex. 2013) ("Usually at the notice stage, because discovery has not yet occurred, courts do not review the underlying merits of the action in deciding whether to conditionally certify the class."). If the court conditionally certifies the class, putative class members are given notice and the opportunity to opt-in. *See Mooney*, 54 F.3d at 1214. The case then proceeds through discovery as a representative action. *See id.*

At this initial "notice stage" of the *Lusardi* approach, "courts in this District are split on [the appropriate test to apply]." *See Freeman*, 2018 WL 1609577, at *6. Some courts require a plaintiff to establish three elements: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses

asserted; and (3) those individuals want to opt-in to the lawsuit. *See id.* at *3 (collecting cases). On the other hand, a number of courts in the Southern District of Texas have rejected the third element because it is not statutorily required. *See id.* at *3 n.2. I have previously considered the issue, determining that the two-element approach is appropriate and that "[p]laintiffs need not present evidence that other individuals want to join the lawsuit to obtain conditional certification." *Id.* at *6.

The second step of the *Lusardi* approach—the decertification stage—is triggered if a defendant files a motion for decertification after the opt-in period has concluded and discovery is largely complete. *See Mooney*, 54 F.3d at 1214. The Fifth Circuit has explained:

> At this [decertification] stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e., the original plaintiffs—proceed to trial on their individual claims.

*Id.*

## CONDITIONAL CERTIFICATION IS PROPER

"As noted above, a plaintiff seeking to obtain conditional certification must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; and (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted." *Freeman*, 2018

WL 1609577, at *4 (internal quotation marks, ellipsis, and brackets omitted).  I will

evaluate the request for conditional certification in light of these two factors.

A.    **THERE IS A REASONABLE BASIS FOR CONCLUDING THAT OTHER AGGRIEVED INDIVIDUALS EXIST**

To satisfy the first element, Tillis "need only show that it is reasonable to believe

that there are other aggrieved employees who were subject to an allegedly unlawful

policy or plan."  *Austin v. Onward, LLC*, 161 F. Supp. 3d 457, 464 (S.D. Tex. 2015)

(quotation marks and citation omitted).  This requirement is easily satisfied here since 12

Global employees are part of this lawsuit seeking to recover overtime pay.  Tillis filed the

Original Complaint and 11 others have submitted opt-in notices.  Furthermore, the four

Global employees who submitted declarations in support of the conditional certification

motion expressly state that they were not paid overtime for hours worked in excess of 40

hours per week and they are aware of other individuals who "worked under the same

conditions and [were] paid in the same way."  Dkt. 29-1 at 2.  Accordingly, the first

element for conditional certification is met.

B.    **MEMBERS OF THE PROPOSED CLASS ARE SIMILARLY SITUATED**

As already pointed out, Tillis seeks conditional certification of a class comprised

of all individuals who worked for Global at any time for the past three years, were

classified as independent contractors, and performed "reset" services at Dollar General

stores. Tillis alleges that she and the other proposed class members are similarly situated

because, "[a]s crew members performing 'reset' services for Dollar General stores, they

did the same type of work and they were paid the same way: a set weekly mount of

money."   Dkt. 29 at 7.   Tillis further alleges that she and her fellow co-workers all worked in excess of 40 hours per week without receiving overtime pay.

Defendants maintain that conditional certification is not proper because it would require the Court to make too many individualized inquiries as to the purported employment relationship between each opt-in plaintiff and Global and Dolgencorp. Dolgencorp also argues that there is no evidence supporting the notion that Dolgencorp was involved in the alleged pay practices or that it was a joint employer with Global. Before I tackle Defendants' arguments one by one, let me briefly summarize the legal standard I must follow in determining whether Tillis is similarly situated to members of the proposed class.

A plaintiff is similarly situated to members of a proposed class when she and the putative class members have the same or substantially similar job requirements and pay provisions.  *See Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 996 (E.D. Tex. 2011) ("[T]he relevant inquiry is whether the potential class members performed the same basic tasks and were subject to the same pay practices.").   In making this assessment, "the court need not find uniformity in each and every aspect of employment to determine that a class of employees is similarly situated."  *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 288 (N.D. Tex. 2012).  Rather, plaintiffs must show that class members are "similarly situated . . . in relevant respects *given the claims and defenses asserted.*" *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 465–66 (S.D. Tex. 2012) (quotation marks and citation omitted) (emphasis added).

Based on this standard, I conclude that Tillis and members of the putative class are similarly situated in terms of their work and pay.  The members of the proposed class all performed the same basic tasks in "re-setting" stores and all worked roughly the same number of hours in carrying out their job responsibilities.  By the express terms of the class definition, all members of the putative class are also similar in that they all were classified as independent contractors.  These similarities more than adequately satisfy the second prong required for conditional certification.

Dolgencorp asks me to disregard the declarations filed in support of the motion for conditional class certification because they are conclusory, virtually identical, and "set forth unsupported allegations without any explanation whatsoever of how they came to have personal knowledge of the matters set forth therein."  Dkt. 36 at 22.  I completely disagree.  The declarations are short and to the point, but that does not automatically make them unreliable.  The declarations reflect that each Global employee (i) worked on "re-sets" around the country; (ii) collected a fixed amount of pay per "re-set;" (iii) worked more than 40 hours per workweek without receiving overtime pay; (iv) received supervision and instruction by Global and Dolgencorp employees; and (v) has knowledge of other Global employees who worked more than 40 hours per week performing the same tasks and did not receive overtime pay.  These declarations constitute probative and reliable evidence that provides a basis for my determination that Tillis and the other putative class members are similarly situated.

Now let me address Defendants' assertion that the proposal to include workers classified as independent contractors defeats certification because determining who is an

9

independent contractor requires an extremely fact-intensive analysis that must be resolved on a case-by-case basis. In advancing this position, Defendants argue that Tillis has not met the economic realities test to show that Global misclassified Tillis and her co-workers as independent contractors. Simply put, I am not persuaded by this argument.

By way of background, district "[c]ourts in the Fifth Circuit use the economic realities test to determine whether a worker is an employee or an independent contractor for purposes of the FLSA." *Vaughan v. Document Grp., Inc.*, 250 F. Supp. 3d 236, 242 (S.D. Tex. 2017). The test includes five, non-exclusive factors: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. No single factor is determinative." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) (citation omitted).

Although Defendants claim that application of the economic realities test requires an inherently individualized inquiry, I am not convinced that I should utilize the economic realities test, dive into the merits, and pursue an employee-by-employee analysis at this notice stage of conditional certification. It is well-established that a district court is "not to engage in merits-based analysis at the notice stage of a collective action" because discovery has not occurred. *Jones v. JGC Dall. LLC*, No. 3:11-CV-2743-O, 2012 WL 6928101, at *4 (N.D. Tex. Nov. 29, 2012). *See also McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 804 (S.D. Tex. 2010) (At the notice stage "it is not

appropriate to require the plaintiffs to produce evidence sufficient to survive summary judgment or to otherwise test the merits beyond the light burden of production to show potential class members are similarly situated.").  For this reason, the vast majority of district courts within the Fifth Circuit have refused to apply the economic realities analysis at the notice stage of conditional certification, concluding that such an inquiry is better addressed at the decertification stage after discovery has taken place.  *See, e.g., Sanchez v. Schlumberger Tech. Corp.*, No. 2:17-CV-102, 2018 WL 2335333, at *7 (S.D. Tex. Jan. 24 2018) ("Whether the workers are employees or independent contractors under the five-part economic realities test is an argument on the merits that the court does not delve into at the conditional certification, notice stage of the case."); *Vaughan*, 250 F. Supp. 3d at 242 (noting that those "[c]ourts that decline to apply the economic realities test at the conditional certification stage generally conclude that the test pertains to the merits of the case, not to collective action certification"); *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 864 (S.D. Tex. 2012) (stating that courts located in this District "have typically declined to apply the economic realities factors or other individualized analyses at the conditional certification stage"); *Walker*, 870 F. Supp. 2d at 471 (stating that "the economic factors test is likely not appropriate for determination at the first stage of FLSA class certification"); *Prejean v. O'Brien's Resp. Mgmt., Inc.*, Nos. 12-1045, 12-1716, 12-1533, 2013 WL 5960674, at *8 (E.D. La. Nov. 6, 2013) (conditionally certifying an FLSA class involving misclassification of independent contractors without undertaking an evaluation of the economic realities factors because "such an inquiry is better addressed at the decertification stage after discovery has occurred, when the court

11

will be in a position to scrutinize all of the evidence in greater detail").  I agree with this reasoning and conclude that the economic realities test is not appropriate at the first stage of FLSA class certification.

In a final attempt to defeat the conditional certification motion, Dolgencorp claims that Tillis provides no evidence that Dolgencorp had any involvement in the alleged illegal pay practice or that it is a joint employer with Global.  This argument misses the mark completely.

The FLSA defines an "employer" very broadly as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d). "[U]nder the FLSA an individual can be employed by one employer or by more than one joint employer." *Martin v. Bedell*, 955 F.2d 1029, 1034 n.10 (5th Cir. 1992).  "There are two joint employer scenarios under the FLSA."  29 C.F.R. § 791.2.  "In the first joint employer scenario, the employee has an employer who . . . employs the employee to work, . . . but another person [or entity] simultaneously benefits from that work."  *Id*. § 791.2(a)(1).  "The other person [or entity] is the employee's joint employer only if that person [or entity] is acting directly or indirectly in the interest of the employer in relation to the employee."  *Id.*  "In the second joint employer scenario, one employer employs a worker for one set of hours in a workweek, and another employer employs the same worker for a separate set of hours in the same workweek."  *Id.* § 791.2(e)(1).  "The jobs and the hours worked for each employer are separate, but if the employers are joint employers, both employers are jointly and severally liable for all of the hours the employee worked for them in the workweek."  *Id.*  The joint employer doctrine holds

12

joint employers jointly and severally liable for any violations of the FLSA.  *See Seong Song v. JFE Franchising, Inc.*, 394 F. Supp. 3d. 748, 755 (S.D. Tex. 2019).  My job at the initial notice stage of conditional certification is not to delve into the merits of the underlying FLSA case; rather, I must simply assess whether Tillis has made the minimal showing that she is similarly situated to her co-workers in relevant respects given the claims and defenses asserted.  That is why "[c]ourts have held that it is appropriate to issue notice to potential class members when there is some evidence that employers are related, delaying the determination whether the employers actually have a joint-employment relationship."  *McKnight*, 756 F. Supp. 2d at 806 (quotation marks and citation omitted).

"In instances where a motion for conditional certification involves a potential class of employees that worked for separate, but related, employers, courts have reserved consideration of whether the separate employers are joint employers for a final, stage two determination."  *Id.* (quotation marks and citation omitted).  The four declarations offered by Tillis all indicate that Global and Dollar General supervised and instructed Tillis and her co-workers on the details of their job.  Additionally, the Original Complaint alleges that Dolgencorp is jointly liable as a joint employer.  In my view, Tillis has "offered sufficient facts to allege at this stage that Defendants are joint employers under the FLSA and Plaintiffs are entitled to additional discovery on the existence of a 'joint relationship' among Defendants."  *Velazquez v. FPS LP*, No. 4:13-CV-1563, 2014 WL 3843639, at *5 (S.D. Tex. Aug. 4, 2014).  The ultimate determination as to whether or not Dolgencorp is

actually a joint employer of Tillis and the putative class members will be determined at a later date.

***

I, therefore, conclude that Tillis's allegations and evidence are sufficient to meet the low burden of showing that she and the potential plaintiffs are similarly situated.

**FORM OF NOTICE TO POTENTIAL CLASS MEMBERS**

Federal judges have the power to authorize the sending of notice to potential FLSA class members to inform them of the action and to give them the opportunity to participate by opting in. *See Hoffmann-La Roche Inc.*, 493 U.S. at 169–70. "Notice is particularly important for FLSA collective actions as potential plaintiffs' statutes of limitations continue to run unless and until a plaintiff 'gives his consent in writing to become a party and such consent is filed in the court in which such action is brought.'" *Gronefeld v. Integrated Prod. Servs., Inc.*, No. 5:16-CV-55, 2016 WL 8673851, at *5 (W.D. Tex. Apr. 26, 2016) (quoting 29 U.S.C. § 216(b)). It is well settled that courts have wide discretion in deciding the content of the notice and how notice is distributed. *See Jackson v. Superior Healthplan, Inc.*, No. 3:15-CV-3125-L, 2016 WL 7971332, at *6 (N.D. Tex. Nov. 7, 2016) ("Because conditional certification is proper in this action, judicial approval of the form, content, and delivery method for a collective action notice is appropriate.").

Defendants lodge several objections to Tillis's proposed notice to potential class members. Specifically, Defendants contend that (1) notice should not be sent to potential plaintiffs by email; (2) no reminder notice should be sent to potential plaintiffs; (3) the

14

notice period should be 60–days instead of the 75–days proposed by Tillis; and (4) the wording in the notice is flawed.

A.    NOTICE MAY BE SENT TO POTENTIAL CLASS MEMBERS BY EMAIL

Tillis has requested that I permit notice to be sent to potential class members by both first-class mail and email.  Defendants object to the request to send notice by email, arguing that sending notice by mail alone is sufficient to ensure that potential plaintiffs receive notice of this case.  In *Wade v. Furmanite America, Inc.*, I considered whether notice should be sent to potential class members by email in addition to first-class mail. *See* No. 3:17-CV-00169, 2018 WL 2088011, at *6 (S.D. Tex. May 4, 2018).   In analyzing the issue, I began by noting that "the purpose of notice is to inform potential class members of the lawsuit and provide them the opportunity to join the case, [and I] will encourage all efforts aimed at ensuring that potential plaintiffs discover that this action is pending." *Id.* at *7.  After acknowledging that "millions of Americans rely on email as their primary method for communication," I ultimately allowed notice to be distributed by both email and first-class mail. *Id.*  I explained that "[u]tilizing two means of delivery—first-class mail and email—is more likely to result in potential plaintiffs receiving notice of the lawsuit than by a single delivery method." *Id.*  Email notice is particularly needed in a case like this one, where the potential class members travel routinely and work all over the country, making it unlikely that normal first-class mail notice will be effective.

**B.     REMINDER NOTICE IS APPROPRIATE**

Next, Defendants object to Tillis's request to send a reminder notice to potential

class members.  It is Defendants' position that a reminder notice "may unnecessarily 'stir

up litigation' or improperly suggest the Court's endorsement of plaintiff's claims."  Dkt.

34 at 5.  Admittedly, there is a split of authority on whether reminder notices should be

utilized.

I recently addressed, for the first time, whether a reminder notice is appropriate in

collective action cases.  *See Dickensheets v. Arc Marine, LLC*, ___ F. Supp. 3d ___, 2020

WL 855172, at *2 (S.D. Tex. Feb. 19, 2020).  In approving the use of reminder notices, I

noted:

> To me, the benefits to be gained by sending a reminder notice far outweigh
> any potential disadvantages.  A reminder notice provides a second chance
> to potential plaintiffs who, for whatever reason, do not receive, open, or
> view the initial letter, email, or text message providing notice.  A reminder
> notice also helps ensure that those potential plaintiffs, who read the original
> notice but forget about it in the hustle and bustle of daily life, are reminded
> at least once about their opportunity to join the lawsuit.  Defendants'
> concern, that a reminder notice can give an inaccurate impression that the
> Court actively promotes participation in the collective action, can be easily
> solved.  The class notice can simply include language expressly stating that
> the Court does not encourage or discourage participation in the case. . . .  I
> find that a reminder notice is a reasonable way to see that potential class
> members receive notice of the action and have a chance to decide whether
> to participate in the case.  I see no downside to a reminder notice as
> Defendants will not be unduly burdened or prejudiced.

*Id.*

The purpose of class notice is to ensure that potential plaintiffs "receiv[e] accurate

and timely notice concerning the pendency of the collective action, so that they can make

informed decisions about whether to participate."  *Hoffmann-La Roche Inc.*, 493 U.S. at

170. Where, as here, potential class members travel constantly across the country to perform their job duties in different locales, reminder notices are a particularly appropriate method to ensure the potential plaintiffs are made fully aware of the collective action lawsuit.

## C.      A 75-DAY OPT-IN PERIOD IS REASONABLE

The parties' next point of contention is whether potential class members should be given 60 or 75 days to opt-in to the lawsuit.  As a general rule, most district courts in the Fifth Circuit default to a 60-day opt-in notice period.  Indeed, I have previously found a 60-day notice period reasonable.  *See Wade*, 2018 WL 2088011, *8.  But that is not a hard and fast rule that must be followed in each and every case.  Each case is unique and my job is to carefully review the record to determine the most appropriate notice period in a given situation.  In the present case, I am mindful that many of the potential class members are required to travel across this nation on a regular basis to perform their job duties.  Given that the "FLSA is a remedial statute that has been construed liberally to apply to the furthest reaches consistent with congressional direction," it seems particularly appropriate in this case to give potential class members who are away from home for long stretches additional time to determine whether they are interested in participating in this lawsuit.  *Prickett v. DeKalb Cty.*, 349 F.3d 1294, 1296 (11th Cir. 2003) (internal quotation marks and citation omitted).  Therefore, I find that a 75–day notice period is reasonable in this case.

17

**D.      WORDING OF NOTICE**

Finally, Defendants make two objections to the wording in the proposed notice. First, Defendants claim that the proposed phrase "the Court has not yet decided if Global broke the law" is highly inflammatory in that it infers that Global committed some sort of criminal act, a claim not even alleged in the lawsuit.   Defendants suggest that the language should be revised to state: "the Court has not yet decided if Global violated federal law."   Candidly, I don't really see a meaningful difference between "broke the law" and "violated federal law," but if that simple word change solves the issue in the minds of the Defendants, then so be it.   The notice shall state: "the Court has not yet decided if Global violated federal law."

Second, Defendants aver that the proposed notice should advise class members of their right to choose their own counsel to represent them in this case.   *See Bradbury v. Transglobal Servs., LLC*, No. MO:18-CV-00036-DC, 2018 WL 3603078, at *5 (N.D. Tex. June 16, 2018) ("The proposed notice must inform its recipients that they may contact any attorney of their choosing to discuss the case.").   I agree.   Tillis is, therefore, ordered to include similar language in the notice to be sent to potential plaintiffs.

**CONCLUSION**

Tillis has made a sufficient showing at this preliminary stage to warrant the issuance of notice, to permit full discovery, and to allow the Court to conduct a more rigorous analysis at the final decertification stage when it has the benefit of more information.   As such, Plaintiff's Opposed Motion for Conditional Class Certification and

Notice (Dkt. 29) is **GRANTED**.  Conditional certification is granted for a class defined as follows:

> All individuals who (1) worked for Global at any time during the three-year period before this order, March 23, 2017 through March 23, 2020; (2) were classified as independent contractors, and (3) performed "reset" services at Dollar General stores.

I order the parties to confer and file an agreed Proposed Notice and an agreed Proposed Consent to Join form by April 2, 2020.  Defendants shall provide Tillis with a list of all employees fitting the description of the conditionally certified class in a usable electronic format by April 8, 2020.  This list shall include each individual's full name, last known mailing address, e-mail address (if known), telephone number, and date(s) of employment.  Tillis shall have fourteen (14) days from the receipt of this information to send notice to the potential class members by first-class mail and email.  The opt-in period shall be seventy-five (75) days from the date the notice is sent.  A reminder notice may also be sent to potential class members.

SIGNED in Houston, Texas on this 23rd day of March, 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE